Michael P. Balaban   State Bar No. 9370
LAW OFFICES OF MICHAEL P. BALABAN
10726 Del Rudini Street
Las Vegas, NV  89141
(702)586-2964
Fax: (702)586-3023

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JORGE MEJIA, | ) CASE NO. |
| | ) |
| Plaintiff, | ) 1. DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT |
| vs. | ) 2. NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT |
| SECURITYNATIONAL MORTGAGE COMPANY, a Utah Corporation, | ) 3. RETALIATION IN VIOLATION OF THE TITLE VII, THE ADA AND NEVADA STATE LAW |
| Defendant. | ) 4. VIOLATION OF FLSA AND NRS 608, ET SEQ. |
| | ) 5. BREACH OF IMPLIED-IN-FACT CONTRACT |
| | ) 6. BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING |
| | ) 7. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS |
| | ) JURY DEMAND |

Plaintiff JORGE MEJIA ("Plaintiff" or "Mejia") alleges as follows:

1.     This action is brought pursuant to the Americans with Disabilities Act of 1990, *42 U.S.C. § 12101, et seq.* (hereinafter "ADA"), Title VII of the Civil Rights Act of 1964, *42 USC §2000e*, *et seq.* (hereinafter "Title VII"), Fair Labor Standards Act of 1938, *29 U.S.C. § 203, et*

1

*seq.* (hereinafter "FLSA") and Nevada State Law to obtain relief for Plaintiff for discriminating against him in the terms, conditions or privileges of employment and terminating him on the basis of his disability, national origin, for retaliation, not paying amounts due Plaintiff, for breach of an implied-in-fact contract, for breach of the covenant of good faith and fair dealing and for intentional infliction of emotional distress.

2. Jurisdiction is predicated on these code sections as well as *28 USC §1331* as this action involves a federal question and supplemental jurisdiction for the state law claims.

3. At all relevant times, SECURITYNATIONAL MORTGAGE COMPANY, a Utah Corporation (hereinafter "Defendant" or "SNMC") employed fifteen (15) or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year, and are therefore subject to the provisions of the ADA and Title VII.

4. The events or omissions giving rise to Plaintiff's claim occurred in this judicial district, thus venue is proper here pursuant to *28 USC §1391(b)(2),* and the ends of justice so require.

**PARTIES**

5. Plaintiff, Mejia, is a resident of the State of Nevada, County of Clark and City of Las Vegas.

6. Plaintiff is informed and believes and thereon alleges that at all relevant times giving rise to the claims asserted, Plaintiff was employed in Las Vegas, Nevada by Defendant.

7. Defendant is an employer within the meaning of *42 USC §2000e(b)*.

**EXHAUSTION OF REMEDIES**

8. Plaintiff timely filed a "Charge of Discrimination" with the Nevada Equal Rights Commission ("NERC") and Equal Employment Opportunity Commission ("EEOC") and a Notice of Right to Sue was issued on February 6, 2020, a copy of which is attached to Complaint as Exhibit "A".

///

**STATEMENT OF FACTS**

9. Plaintiff worked for SNMC as a Loan Officer from July 2, 2018 through April 25, 2019.

10. At the end of June 2018, Mejia went to SNMC and spoke to Branch Manager John Updike and told him he would like to join SNMC because Walter Mosca-Duran told Plaintiff that SNMC pays for credit reports and the Mosca-Duran was getting paid commissions of 1.75% of the loan amount with no experience.

11. Mejia told Updike that he had experience and was making commissions of 2.5% of the loan amount at his current job and Updike told Plaintiff that SNMC would pay Mejia 2.5% as of his hire date if he moved to SNMC. Thereafter Plaintiff transferred his license to SNMC and was hired by Defendant on July 2, 2018.

12. Once hired Mejia was told by Updike that he would only get 1.5% for the first 3 months, not 2.5% like he had agreed to with Updike. As it turned out Plaintiff was never paid 2.5% of the loan amount for as long as he worked for Defendant.

13. Around August of 2018 Plaintiff referred Realtor/Loan Officer Jessica Martinez to SNMC and was supposed to get a referral fee for bringing loan officers to the company but never received a referral fee for referring Martinez to SNMC.

14. On August 20, 2018 Mejia received an email stating he was eligible for benefits including medical benefits effective September 1, 2018 but when he asked Updike about the same he was told he had to average three loans per month before he was eligible for benefits. As it turned out Plaintiff never received any benefits during the time he was employed by Defendant.

15. Meanwhile Plaintiff developed a serious eye condition, chronic meibomitis, which made his eyes water due to dryness and his eyelids swell and created a burning sensation in his eyes, itchy eyelids and skin flaking around his eyes. Mejia also developed dermatitis and acne rosacea around his eyes which made his skin get red with small white spots and small red pus-filled bumps. Although Mejia needed to wear sunglasses for the conditions, Updike would not

allow Plaintiff to wear the sunglasses in the office.

16. In November 2018 Mejia was charged $69.98 for extra fees on his check which was never paid back to him by Defendant even though Plaintiff proved this was a mistake by SNMC and in January of 2019 Mejia had to pay $301.80 for business cards that the company said they would pay for.

17. On January 31, 2019 Plaintiff was moved to part time even though he was a top 10 producer in October of 2018 and he told SNMC that he needed to be full time for many reasons including to receive benefits and in order to get full time verification so he could buy a house.

18. On April 2, 2019 Plaintiff was asked to complete a training. Mejia completed the training with a lot of difficulty including worsening the situation with his eyes in which his doctor had to insert some tubes in his eyes on April 29, 2019.

19. On April 25, 2019 Plaintiff received a call from Human Resources Director Dale Jakins that his employment was being terminated. Mejia was told that his termination was due to non-performance including failure to originate a loan since September 2018.

20. This was untrue, Plaintiff was not the only one that was not producing as the whole company had a slow start to 2019 and Plaintiff was one of the top ten producers in the company in October 2018.

21. When Mejia was terminated by SNMC they still owed him $12,916.00 in unpaid commissions which he still has not been paid for. In addition Plaintiff had loans that were about to close when he was terminated. One of the loans eventually closed at Mejia's new place of employment but another one for about $4,000.00 in commission never did.

22. In addition on August 12, 2019 one of Plaintiff's listing was canceled due to SNMC not responding to an appraisal dispute and Mejia lost about $995.00.

///

///

///

4

# FIRST CAUSE OF ACTION

**(For Disability Discrimination in Violation of**

**the Americans with Disabilities Act of 1990)**

23. Plaintiff Mejia incorporates the allegation set forth in paragraphs 1 through 22, inclusive, as if fully set forth herein.

24. As set forth above Mejia developed a serious eye condition, chronic meibomitis, which made his eyes water due to dryness and his eyelids swell and created a burning sensation in his eyes, itchy eyelids and skin flaking around his eyes. Plaintiff also developed dermatitis and acne rosacea around his eyes which made his skin get red with small white spots and small red pus-filled bumps.

25. Plaintiff's eye conditions qualified as disabilities under the ADA because they substantial limited the major life activities of seeing, reading and working, among other major life activities.

26. SNMC failed to interact with Plaintiff to try to accommodate his disabilities.

27. Instead Defendant terminated Mejia's employment on April 25, 2019 in part because of his disabilities and Plaintiff has suffered overall economic losses in earnings, bonuses, job benefits and expenses, in an amount to be proven at trial which exceeds the minimum jurisdictional limits of this Court because of the termination.

28. Further as a further direct, foreseeable, and legal result of the Defendant terminating Mejia's employment on April 25, 2019 in part because of his disabilities, Plaintiff has suffered indignity, mental anguish, humiliation, emotional distress, nervousness, tension, anxiety, recurring nightmares, depression, inconvenience and loss of enjoyment of life and other pecuniary losses, the extent of which is not fully known at this time, for which Mejia seeks damages in an amount in excess of the minimum jurisdictional limits of the Court, also to be proven at the time of trial.

29. In acting as they did, Defendant knowingly, willfully, and intentionally acted in

conscious disregard of Mejia's rights.  Their conduct was despicable, has subjected Mejia to oppression, and it warrants an award of punitive and exemplary damages in favor of Mejia, in a sum according to proof at trial.

30. Mejia claims the damages alleged herein, together with prejudgment interest as provided by law, in a sum according to proof at trial.

31. Mejia has incurred, and continues to incur, attorney's fees in the prosecution of his claims.  Mejia therefore seeks an award of reasonable attorney's fees, in a sum according to proof at trial.

**SECOND CAUSE OF ACTION**

**(Title VII of the Civil Rights Act of 1964 -**

**National Origin Discrimination against SNMC)**

32. Plaintiff Mejia incorporates the allegations set forth in paragraphs 1 through 31, inclusive, as if fully set forth herein.

33. This cause of action is brought pursuant to Title VII as it involves a claim by Plaintiff for national origin discrimination which is governed by Title VII.

34. As previously set forth herein above, Plaintiff was told he was terminated non-performance including failure to originate a loan since September 2018.

35. This was untrue, Plaintiff was not the only one that was not producing as the whole company had a slow start to 2019 and Plaintiff was one of the top ten producers in the company in October 2018.

36. Plaintiff believes these reasons were given as a pretext for national origin discrimination because Mejia was from El Salvador.  This is supported by the fact that his manager Updike continued to make derogatory remarks about El Salvador and Salvadorians throughout Plaintiff's tenure with the company.

37. This included Updike calling El Salvador a third world country, saying on one occasion the Mejia was sick due to eating the food in El Salvador, telling Plaintiff on another

occasion that Salvadorians don't even have a third or fourth grade education and making a comment on another occasion about a co-worker eating Salvadorian food with her bare hands in the break room.

38. As a direct, foreseeable, and legal result of the national origin discrimination set forth above, Plaintiff has suffered, overall economic losses in earnings, bonuses, job benefits and expenses, in an amount to be proven at trial which exceeds the minimum jurisdictional limits of this Court.

39. As a further direct, foreseeable, and legal result of national origin discrimination set forth above, Plaintiff has suffered crying attacks, embarrassment, feeling violated, being unable to sleep, indignity, mental anguish, humiliation, emotional distress, nervousness, tension, anxiety, recurring nightmares, depression, inconvenience and loss of enjoyment of life and other pecuniary losses, the extent of which is not fully known at this time, for which he seeks damages in an amount in excess of the minimum jurisdictional limits of the court, also to be proven at the time of trial.

40. In acting as they did, SNMC knowingly, willfully, and intentionally acted in conscious disregard of Plaintiff's rights. Their conduct was despicable, has subjected Plaintiff to oppression, and it warrants an award of punitive and exemplary damages in favor of Plaintiff, in a sum according to proof at trial.

41. Plaintiff claims the damages alleged herein, together with prejudgment interest as provided by law, in a sum according to proof at trial.

42. Plaintiff has incurred, and continues to incur, attorney's fees in the prosecution of her claims. Plaintiff therefore seeks an award of reasonable attorney's fees, in a sum according to proof at trial.

## THIRD CAUSE OF ACTION

**(For Retaliation in Violation of Title VII, ADA and Nevada State Law)**

43. Plaintiff Mejia incorporates the allegation set forth in paragraphs 1 through 42,

inclusive, as if fully set forth herein.

44. This cause of action is brought pursuant to Title VII, the ADA and Nevada State Law as it involves a claim by Plaintiff for retaliation in violation of Title VII, the ADA and Nevada State Law.

45. As set forth herein above, Mejia complained to Updike about comments Updike made about El Salvador, his medical condition with his eyes and skin and not being paid all the commissions and other amounts he was due.  Plaintiff believes and will prove that his termination was in retaliation for complaining to Updike about the things set forth above.

46. As a direct, foreseeable, and legal result of Defendant's retaliation, Plaintiff has suffered, overall economic losses in earnings, bonuses, job benefits and expenses, in an amount to be proven at trial which exceeds the minimum jurisdictional limits of this Court.

47. As a further direct, foreseeable, and legal result of Defendant's retaliation, Plaintiff has suffered indignity, mental anguish, humiliation, emotional distress, nervousness, tension, anxiety, recurring nightmares, depression, inconvenience and loss of enjoyment of life and other pecuniary losses, the extent of which is not fully known at this time, for which he seeks damages in an amount in excess of the minimum jurisdictional limits of the Court, also to be proven at the time of trial.

48. In acting as they did, Defendant knowingly, willfully, and intentionally acted in conscious disregard of Plaintiff's rights.  Their conduct was despicable, has subjected Plaintiff to oppression, and it warrants an award of punitive and exemplary damages in favor of Plaintiff, in a sum according to proof at trial.

49. Plaintiff claims the damages alleged herein, together with prejudgment interest as provided by law, in a sum according to proof at trial.

50. Plaintiff has incurred, and continues to incur, attorney's fees in the prosecution of her claims.  Plaintiff therefore seeks an award of reasonable attorney's fees, in a sum according to proof at trial.

## FOURTH CAUSE OF ACTION

### (For Violation of the FLSA and NRS 608, et seq.)

51. Plaintiff Mejia incorporates the allegations set forth in paragraphs 1 through 50, inclusive, as if fully set forth herein.

52. Defendant regularly engaged in commerce and its employees handled and used goods which have moved in interstate commerce and thus is subjected to the provisions of the FLSA.

53. Plaintiff at all relevant times was an employee of Defendant, as defined by *29 U.S.C. § 203(d)* and *NRS 608.010*.

54. During the period of time that Plaintiff was employed by SNMC, Plaintiff performed work for which he was not compensated for in an amount $12,916.00 in unpaid commissions to be proven at trial in violation of the FLSA and *NRS 608.016*.

55. In addition, Plaintiff was not paid a referral fee for bringing aboard Realtor/Loan Officer Jessica Martinez, $69.98 for extra fees on Mejia's check, $301.80 for business cards which SNMC said they would pay for and $995.00 for his listing being canceled due to an appraisal fee dispute with SNMC, also in violation of the FLSA and *NRS 608.016*.

56. Finally *NRS 608.040(1)* provides that if an employer does not pay an employee all the wages and compensation they are owed when terminated, the wages and compensation continue at a daily rate until paid or for 30 days, whichever is less.

57. Plaintiff was not paid all the commissions and other amounts set forth above when terminated and thus is owed a penalty pursuant to *608.040(1)* in an amount to be proven at trial.

58. As a direct and proximate result of Defendant violating the FLSA, Plaintiff has suffered loss of income, including but not limited to loss of past wages, benefits, expenses, reimbursement and other damages to be proven at trial.

59. Defendant's actions were with deliberate indifference to such right or were willful, entitling Plaintiff to an award of liquidated damages equal to double the amount of his actual damages pursuant *29 USC §§216(b)* and *626(b)*.

Case 2:20-cv-00801-JCM-DJA   Document 1   Filed 05/05/20   Page 10 of 16

60. Plaintiff has incurred, and continues to incur, attorney's fees in the prosecution of his claims. Plaintiff therefore seeks an award of reasonable attorney's fees, in a sum according to proof at trial.

## FIFTH CAUSE OF ACTION

### (For Breach of Implied-In-Fact Contract)

61. Plaintiff Mejia incorporates the allegations set forth in paragraphs 1 through 60, inclusive, as if fully set forth herein.

62. Plaintiff was employed by Defendant under an implied-in-fact contract which Plaintiff relied on throughout his employment with Defendant from July 2, 2018 through April 25, 2019.

63. Among other things, Defendant promised Plaintiff that SNMC would pay Mejia commissions of 2.5% of the loan amount on mortgages closed, would pay Plaintiff benefits including medical benefits and would only terminate Mejia for good cause.

64. SNMC breached this promise and the parties' implied-in-fact contract by only paying Mejia 1.5% of the loan amount on mortgages closed, not paying Plaintiff benefits including medical benefits and terminating Mejia in bad faith without good cause.

65. As a direct, foreseeable, and legal result of the Defendant's breach of the parties' implied-in-fact contract, Plaintiff has suffered overall economic losses in earnings, bonuses, job benefits and expenses, in an amount to be proven at trial which exceeds the minimum jurisdictional limits of this Court.

66. As a further direct, foreseeable, and legal result of the Defendant's breach of the parties' implied-in-fact contract, Plaintiff has suffered indignity, mental anguish, humiliation, emotional distress, nervousness, tension, anxiety, recurring nightmares, depression, inconvenience and loss of enjoyment of life and other pecuniary losses, the extent of which is not fully known at this time, for which he seeks damages in an amount in a sum according to proof at trial.

67. In acting as they did, Defendant knowingly, willfully, and intentionally acted in conscious disregard of Plaintiff's rights. Their conduct was despicable, has subjected Plaintiff to

10

oppression, and it warrants an award of punitive and exemplary damages in favor of Plaintiff, in a sum according to proof at trial.

68.     Plaintiff claims the damages alleged herein, together with prejudgment interest as provided by law, in a sum according to proof at trial.

69.     Plaintiff has incurred, and continues to incur, attorney's fees in the prosecution of his claims. Plaintiff therefore seeks an award of reasonable attorney's fees, in a sum according to proof at trial.

## SIXTH CAUSE OF ACTION

### (For Breach of the Covenant of Good Faith and Fair Dealing)

70.     Plaintiff Mejia incorporates the allegations set forth in paragraphs 1 through 69, inclusive, as if fully set forth herein.

71.     As a result of the employment relationship which existed between Plaintiff and Defendant, the expressed and implied promises made in connection with that relationship, and the acts, conduct, and communication resulting in these implied promises, Defendant promised to act in good faith towards and deal fairly with Plaintiff which requires, among other things, that:

(a)     Each party in the relationship must act with good faith towards the other concerning all matters related to the employment;

(b)     Each party in the relationship must act with fairness towards the other concerning all matters related to the employment;

(c)     Neither party would take any action to unfairly prevent the other from obtaining the benefits of the employment relationship;

(d)     Defendant would comply with its own representations, rules, policies and procedures in dealing with Plaintiff;

(e)     Defendant would not terminate Plaintiff without a fair and honest cause, regulated by good faith on Defendant's part;

(f)     Defendant would not terminate Plaintiff in an unfair manner; and

11

  (g) Defendant would give Plaintiff's interests as much consideration as it gave its own interests.

  72. Defendant's discharge of Plaintiff was wrongful, in "bad faith", and unfair, and therefore a violation of Defendant's legal duties.

  73. Defendant's breach of the Covenant of Good Faith and Fair Dealing was a substantial factor in causing damage and injury to Plaintiff.

  74. As a direct, foreseeable, and legal result of the Defendant's breach of the Covenant of Good Faith and Fair Dealing, Plaintiff has suffered, overall economic losses in earnings, bonuses, job benefits and expenses, in an amount to be proven at trial which exceeds the minimum jurisdictional limits of this Court.

  75. As a further direct, foreseeable, and legal result of the Defendant's Breach of the Covenant of Good Faith and Fair Dealing, Plaintiff has suffered indignity, mental anguish, humiliation, emotional distress, nervousness, tension, anxiety, recurring nightmares, depression, inconvenience and loss of enjoyment of life and other pecuniary losses, the extent of which is not fully known at this time, for which he seeks damages in a sum according to proof at trial.

  76. In acting as they did, Defendant knowingly, willfully, and intentionally acted in conscious disregard of Plaintiff's rights.  Their conduct was despicable, has subjected Plaintiff to oppression, and it warrants an award of punitive and exemplary damages in favor of Plaintiff, in a sum according to proof at trial.

  77. Plaintiff claims the damages alleged herein, together with prejudgment interest as provided by law, in a sum according to proof at trial.

  78. Plaintiff has incurred, and continues to incur, attorney's fees in the prosecution of his claims.  Plaintiff therefore seeks an award of reasonable attorney's fees, in a sum according to proof at trial.

///

///

## SEVENTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

79. Plaintiff Mejia incorporates the allegation set forth in paragraphs 1 through 78, inclusive, as if fully set forth herein.

80. Defendant's actions of making derogatory comments about El Salvador and Plaintiff's eye and skin ailments among other things, as set forth above, constitutes extreme and outrageous conduct which was intended to cause severe emotional distress to Plaintiff.

81. Defendant's actions did in fact cause severe emotional distress to Plaintiff, including but not limited to, crying attacks, embarrassment, feeling violated, having nightmares about the incident, being unable to sleep, indignity, humiliation, nervousness, tension, anxiety, recurring nightmares and depression, the extent of which is not fully known at this time, for which he seeks damages in an amount in excess of the minimum jurisdictional limits of the Court, also to be proven at the time of trial.

82. In acting as he did, Defendant, knowingly, willfully, and intentionally acted in conscious disregard of Plaintiff's rights.  Defendant's conduct was despicable, has subjected Plaintiff to oppression, and it warrants an award of punitive and exemplary damages in favor of Plaintiff, in a sum according to proof at trial.

83. Plaintiff claims the damages alleged herein, together with prejudgment interest as provided by law, in a sum according to proof at trial.

84. Plaintiff has incurred, and continues to incur, attorney's fees in the prosecution of her claims.  Plaintiff therefore seeks an award of reasonable attorney's fees, in a sum according to proof at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mejia demands judgment against Defendant as follows:

1. Declaring that the acts and practices complained of here are a violation of the ADA, Title VII and Nevada State Law;

2. Enjoining and permanently restraining the violations by Defendant of the ADA, Title VII and Nevada State Law;

3. For overall economic losses in earnings, bonuses, job benefits and expenses, according to proof at time of trial;

4. For compensatory damages for mental and emotional distress, embarrassment, worry, indignity, mental anxiety, mortification, depression, shame, grief, inconvenience and loss of enjoyment of life and other pecuniary losses, all to Plaintiff's damage in a sum to be shown at the time of trial;

5. For an award of liquidated damages equal to double the amount of his actual damages pursuant *29 USC §§216(b)* and *626(b)*;

6. For punitive and exemplary damages;

7. For attorney's fees and costs in an amount determined by the court to be reasonable;

8. For pre-judgment interest on all damages; and

9. For any other and further relief that the Court considers proper.

### **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.

DATED: 5/04/2020    LAW OFFICES OF MICHAEL P. BALABAN

            BY: /s/ Michael P. Balaban
              Michael P. Balaban
              LAW OFFICES OF MICHAEL P. BALABAN
              10726 Del Rudini Street
              Las Vegas, NV  89141

# EXHIBIT "A"

# NOTICE OF RIGHT TO SUE

EEOC Form 161 (11/16)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Jorge Mejia<br>5957 Natures Drive<br>Las Vegas, NV 89122 | From: | Las Vegas Local Office<br>333 Las Vegas Blvd South<br>Suite 5560<br>Las Vegas, NV 89101 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 487-2020-00781 | Saul Vazquez, Investigator | (702) 388-5812 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

**- NOTICE OF SUIT RIGHTS -**
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Enclosures(s)

Patricia A. Kane,
Local Office Director

FEB 0 6 2020
*(Date Mailed)*

cc: Dale Jakins
Director of Human Resources
SECURITYNATIONAL MORTAGE, INC.
2370 Corporate Cir # 200
Henderson, NV 89074